IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAHWASH AHMED,<br><br>    *Plaintiff,*<br><br> v.<br><br>WELLS FARGO BANK, NA,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 19-05316 |

**PAPPERT, J.**                                    January 9, 2020

<u>**MEMORANDUM**</u>

This case involves the latest mortgage-related dispute between Mahwash Ahmed (and though he is not a plaintiff here, her husband Sheikh) and Wells Fargo. After becoming frustrated with Wells Fargo's accounting practices and incomplete responses to inquiries about her account, Ahmed sued Wells Fargo in state court, alleging violations of (1) the Consumer Financial Protection Act and the Real Estate Settlement Procedures Act, (2) the Pennsylvania Unfair Trade Practices and Consumer Protection Law, (3) the Homeowners Protection Act, and (4) the Fair Debt Collection Practices Act. Wells Fargo removed the case to this Court and filed a Motion to Dismiss. For the reasons below, the Court grants the Motion.

I

A

In 2012, Sheikh and Mahwash Ahmed executed a mortgage on their home in favor of Mortgage Electronic Registration Systems, Inc., a nominee for Crosscountry Mortgage Inc. (Mortgage, Ex. A, ECF No. 2-2.) The following year, the mortgage was assigned to Wells Fargo. (Assignment, Ex. C, ECF No. 2-4.) In 2014, Wells Fargo filed

1

a foreclosure action against the Ahmeds in the Montgomery County Court of Common Pleas. (Foreclosure Action, Ex. D, ECF No. 2-5.) The court in 2016 granted Wells Fargo's motion for summary judgment, entering an *in rem* judgment for $366,439.87 plus interest. (Foreclosure Judgment, Ex. E, ECF No. 2-6.)

Following the judgment, Sheikh Ahmed filed a Chapter 13 bankruptcy petition. (Bankruptcy Docket, Ex. F, ECF No. 2-7.) His wife was not a party to the petition. *See* (*id.*) As part of those proceedings, he filed a plan to cure the pre-petition default owed to Wells Fargo. (Chapter 13 Plan, Ex. H, ECF No. 2-9.) Wells Fargo then filed a proof of claim in the bankruptcy proceeding, representing that the total debt owed was $388,590.90. (Proof of Claim, Ex. I, ECF No. 2-10.)

In January of 2017, the Ahmeds sued Wells Fargo in Bankruptcy Court. The case settled and was voluntarily dismissed with prejudice in June of 2018. (Notice of Dismissal, Ex. L, ECF No. 2-13.)[1] The settlement agreement between the parties included a provision stating, among other things, that the Ahmeds agreed to release Wells Fargo from claims "known or unknown" that the Ahmeds "presently have, may have, or claim or assert to have, or hereafter have" against Well Fargo for "any and all Claims in any way relating to or arising out of directly or indirectly, to the Loan, the Note, [or] the Mortgage." (Settlement Agreement, Ex. N, ECF No. 2-15.)

---

[1] The Court takes judicial notice of Exhibits A, C, D, E, F, H, I and L, as they are public records and/or court documents. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 496 (E.D. Pa. 2018) (noting that documents qualifying as public records may be judicially noticed by courts); *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of court proceedings).

B

Mahwash Ahmed now alleges that in November of 2016, Wells Fargo began placing her monthly mortgage payments in a suspense account, which she describes as an "account in the general ledger that temporarily stores transactions for which there is uncertainty about the account in which the transaction should be recorded." *See* (Compl. ¶¶ 22, 30–38, ECF No. 1). Ahmed claims that on November 7, 2016, she paid Wells Fargo $2,531.14 ($33.23 less than the monthly amount due) and the bank held those funds in suspense, thereby failing to credit her account with the amount paid. (*Id.* ¶ 30.) She alleges she made seven more payments on January 9, February 6, March 9, April 10, May 15, June 20 and July 21, which Wells Fargo also placed in the suspense account, adding to what she contends is a non-existent deficiency in her account. (*Id.* ¶¶ 31–38.)

In 2018, Ahmed continued making $2,570.20 monthly payments. (*Id.* ¶ 40.) She was unaware, however, that her 2018 monthly payment obligation had increased to $2,925.54 because Wells Fargo allegedly mailed her statements to the wrong address. (*Id.* ¶¶ 39–40.) The increased amount due was, according to Ahmed, a result of Wells Fargo adding a homeowner's insurance policy and private mortgage insurance to her account. (*Id.* ¶ 40.) Ahmed claims that Wells Fargo's suspense account practice continued into 2018. (*Id.* ¶ 41.) In sum, Ahmed alleges that Wells Fargo placed approximately $90,000 worth of her mortgage payments in a suspense account, generating more than $10,000 in additional income for the bank. (*Id.* ¶ 46.)

Ahmed contacted a Wells Fargo Executive Resolution Specialist in May of 2019 to file a complaint and request an explanation about an unapplied funds balance of

$5,132.62. (*Id.* ¶ 47.) Wells Fargo responded on June 13 and explained, among other things, how funds are applied to an account after a customer files Chapter 13 bankruptcy. (*Id.* ¶ 48.) One week later, Ahmed sent Wells Fargo a written request seeking "monthly mortgage statements, computation of annual mortgage insurance, mortgage insurance payments, escrow amounts calculation and payments, loan payments history and reports to credit bureaus" for the period of October 17, 2016 through June 21, 2019. (*Id.* ¶ 52.) Wells Fargo eventually provided Ahmed with some information but she claims the bank still owes her "full and complete answers" to certain requests. (*Id.* ¶¶ 53, 56.)

II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible

4

on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

III

Wells Fargo attached to its Motion a copy of the Bankruptcy Court Settlement Agreement and contends that Ahmed's claims are all barred by the Release. (Def.'s Mot. to Dismiss ("Def.'s Mot.") 9, ECF No. 2-1.; Settlement Agreement, Ex. N.) In deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A district court ruling on a Rule 12(b)(6) motion generally may not consider matters extraneous to the pleadings, but an exception exists if the "document [is] *integral to or explicitly relied upon* in the complaint." *Id.* at 249 (emphasis in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *see also Schuchardt*, 839 F.3d at 353 (same).

A release is an affirmative defense that may generally only be asserted in a responsive pleading. Fed. R. Civ. P. 8(c)(1). The Third Circuit Court of Appeals, however, has stated that a party may raise a Rule 8(c) affirmative defense, such as release, in a motion to dismiss if it is apparent on the face of the complaint and no development of the record is required. *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (applying rule to a *res judicata* defense but explaining it applies to all Rule 8(c) defenses); *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 525 (W.D. Pa. 2011) (considering a release at the motion to dismiss stage where

5

the release was attached to the complaint and formed the basis of the relief requested by the plaintiff).  The underlying rationale of this exception "is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . *and* has relied upon these documents in framing the complaint.'" *Schmidt*, 770 F.3d at 249 (quoting *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (emphasis added)).

Ahmed in her response does not question the validity or authenticity of the Release and she had notice of it because she signed the Settlement Agreement. *See* (Pl.'s Resp. Opp'n Mot. to Dismiss ("Pl.'s Resp.") 5–7, ECF No. 3). Ahmed argues instead that the Court should interpret the Release in a way that does not bar her claims. *See* (*id*.). Now is not the time for that, however. The Release is not attached to, integral to or explicitly relied on in the Complaint, nor is it apparent from the face of the Complaint. *See generally* (Compl.). The Court will accordingly not consider the Release at this stage in the litigation, but it may end up presenting Ahmed with a significant hurdle at summary judgment.

## IV

Wells Fargo also argues that all four Counts in the Complaint fail to state a claim. The Court addresses each Count in turn.

### A

#### 1

In Count I, Ahmed alleges that Wells Fargo violated the CFPA, 12 U.S.C. §§ 5531 and 5536(a)(1)(B), and RESPA, 12 U.S.C. § 2605. (Compl. ¶¶ 76–79.) Wells Fargo first argues that there is no private right of action to enforce the CFPA, (Def.'s Mot. 11–

6

12), something Ahmed correctly concedes. (Pl.'s Resp. 8.) *See Conway v. U.S. Bank, Nat'l Ass'n*, 2018 WL 6417346, at *3 (E.D. Pa. Dec. 6, 2018) ("There is no private right of action under the [CFPA]; the Act is enforced only by the Bureau of Consumer Financial Protection . . . .").

2

RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). Ahmed alleges that Wells Fargo violated RESPA by, among other things, failing to adequately and timely respond to requests for information about her account. (Compl. ¶ 77(a).) Wells Fargo contends that it is not a "servicer" under § 2605 of RESPA, that Ahmed failed to make a "qualified written request" for the information, and that she failed to sufficiently allege actual damages. (Def.'s Mot. 12–17.)

RESPA defines a "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . ., and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id*. § 2605(i)(3). Wells Fargo argues that once the court entered final judgment in the foreclosure action, the mortgage was extinguished and as a matter of law, Wells Fargo can no longer be "servicing" a mortgage loan. *See* (Def.'s Mot. 12–13). The Court agrees.

Under Pennsylvania law, "[t]he doctrine of merger of judgments . . . provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties." *Stenardo v. Fed. Nat'l Mortg. Ass'n*, 991 F.2d 1089, 1095 (3d Cir. 1993).[2] Courts in this Circuit have found that once a foreclosure judgment is entered, the mortgage no longer exists and thus there is no "servicer" of a mortgage under RESPA. *See, e.g., Gonzalez v. Wells Fargo Home Mortg.*, 2019 WL 4196142, at *6 (D.N.J. July 25, 2019) ("Plaintiffs' mortgage loan was extinguished when final judgment was entered and, under the weight of authority in this District [of New Jersey], Defendant was no longer servicing the loan."), *report and recommendation adopted*, 2019 WL 4193866 (D.N.J. Sept. 4, 2019); *Kajla v. U.S. Bank Nat'l Ass'n*, 2018 WL 1128498, at *7 (D.N.J. Mar. 1, 2018) (holding that following the foreclosure judgment, "the mortgage loan was . . . extinguished and Plaintiff could not avail himself of RESPA's protections."); *Genid v. Fannie Mae*, 2016 WL 4150455, at *3 (D.N.J. Aug. 2, 2016) ("Following the final

---

[2] An exception to the merger doctrine allows parties to a mortgage to "rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." *Stenardo*, 991 F.2d at 1095. Ahmed claims that the exception applies here based on paragraph 10 of the mortgage:
> Reinstatement: Borrower has a right to be reinstated if the lender has required immediate payment in full because of borrower's failure to pay an amount due on the note or the security instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the security instrument, borrower shall tender in a lump sum all amounts required to bring Borrower's account current.

(Mortgage ¶ 10, Ex. A.)

Ahmed does not allege that she ever tendered a lump sum payment; indeed, the documents attached to the Complaint show only monthly payments. *See* (Compl., Ex. 1A, ECF No. 1).

8

judgment of foreclosure, Plaintiffs no longer owned the Property and [Defendant] could not be their servicer.").[3]

At least two New Jersey federal courts have, however, concluded that a plaintiff can still bring a claim under RESPA when there has been a foreclosure judgment but not a foreclosure sale. *See, e.g.*, *Loconsole v. Wells Fargo Mortg.*, 2018 WL 3158816, at *5–6 (D.N.J. June 28, 2018) ("RESPA's . . . procedures apply after a New Jersey court has entered a final judgment of foreclosure but before a foreclosure sale has taken place."); *Mannarino v. Ocwen Loan Serv., LLC*, 2018 WL 1526558, at *4–5 (D.N.J. Mar. 28, 2018) ("Since the judicial sale has not occurred . . . Ocwen's 'merger' theory lacks merit under the circumstances."). In making this distinction, both courts relied on 12 C.F.R. § 1024.41(g), which states that under certain circumstances, "a servicer [under RESPA] shall not move for foreclosure or order of sale, or conduct a foreclosure sale." The courts interpreted this regulation to mean that loan servicers can still have responsibilities under RESPA post-judgment but pre-sale.

The Court disagrees with that interpretation. As a matter of law, the mortgage loan ceases to exist following the judgment of foreclosure. *See Stenardo*, 991 F.2d at 1095. After the foreclosure judgment, any payments made to the judgment creditor, here Wells Fargo, go to pay off the judgment. They are not made pursuant to the terms of the mortgage loan, as required by RESPA's text. *See* 12 U.S.C. § 2605(i)(3).[4]

---

[3]   As in Pennsylvania, a mortgage loan is extinguished once a judgment of foreclosure is entered under New Jersey law. *Va. Beach Fed. v. Bank of N.Y./Nat'l Community Div.*, 690 A.2d 1040, 1043 (N.J. Super. Ct. App. Div. 1997).

[4]   Because Wells Fargo is not servicing a loan, the Court need not decide whether Ahmed sufficiently alleged that she sent a qualified written request to Wells Fargo or incurred actual damages.

9

B

Count II alleges a violation of Pennsylvania's UTPCPL. (Compl. ¶¶ 80–85.) According to Ahmed, Wells Fargo engaged in an abusive use of suspense accounts in a manner designed to not credit her monthly payments. (Compl. ¶ 81.)

The UTPCPL is a remedial statute designed to protect consumers from unfair or deceptive acts and practices. *Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001). Section 201-2(4), referred to as the catchall provision, includes a list of unfair methods of competition and deceptive or unfair acts and practices. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008). To state a claim under the UTPCPL, a plaintiff must show: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss. *Seldon v. Home Loan Servs. Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (citing *Hunt*, 538 F.3d at 223 n.14). Reliance involves more than a causal connection between the misrepresentation and the harm; rather, the plaintiff must have "justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation." *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 2013 WL 3380590, at *6 (E.D. Pa. July 8, 2013).

The Complaint fails to allege anything that could establish justifiable reliance. In her response to Wells Fargo's Motion, Ahmed states that the Complaint "alleges that . . . Plaintiffs justifiably relied on Defendant's deceptive representations" that it would comply with RESPA, credit her mortgage payments and investigate her request for account information, but she cites no facts alleged in the Complaint to support her

10

theory. (Pl.'s Resp. 15.) Indeed, Ahmed alleges nothing more than that Wells Fargo "misled" her by placing her payments in a suspense account. (Compl. ¶ 82(a).) She will be allowed to amend her Complaint to allege facts which could show that she justifiably relied on any allegedly deceptive acts by Wells Fargo.

C

Count III alleges that Wells Fargo violated the HPA by continuing to charge her for private mortgage insurance ("PMI") after September of 2012. (Compl. ¶ 87(a).) Wells Fargo argues that the claim is time-barred, (Def.'s Mot. 19), because such claims must be brought within "2 years after the date of discovery of the violation that is the subject of the action." 12 U.S.C. § 4907(b). Thus, Wells Fargo contends that Ahmed needed to bring this claim by September of 2014. (Def.'s Mot. 19.)

The Federal Rules of Civil Procedure require a defendant to plead an affirmative defense—like raising the statute of limitations—in an answer rather than in a motion to dismiss. *Schmidt*, 770 F.3d at 249. The Third Circuit, however, permits statute of limitations defenses to be raised in Rule 12(b)(6) motions "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (internal quotation marks and citation omitted). When the bar is not apparent on the face of the complaint, the statute of limitations does not afford the basis of dismissal in a motion to dismiss. *Id.* Ahmed alleges the HPA violation occurred in 2012, making the bar apparent on the face of the complaint.

In her response, Ahmed simply changes the date on which she contends she no longer should have been charged PMI. *See* (Pl.'s Resp. 18). She now argues that her obligation to pay PMI ceased on August 16, 2018. (*Id.* at 7–8, 18.) In deciding the

11

Motion to Dismiss, the Court must rely solely on the 2012 date alleged in the Complaint. *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citations omitted)). To the extent Ahmed wishes to change her theory, and more importantly to the extent that she can allege facts to support that theory, she can amend her Complaint accordingly.

D

Finally, in Count IV, Ahmed claims that Wells Fargo violated the FDCPA by (1) failing to credit her account on the day mortgage payments were received, (2) creating arrearages to force her account into default, (3) using deceptive representations in connection with the collection of debt, and (4) making inaccurate representations about her debt to consumer reporting agencies. *See* (Compl. ¶ 90(a)–(g)). Wells Fargo correctly asserts that Ahmed cannot state a claim because Wells Fargo is not a "debt collector" under the FDCPA. (Def.'s Mot. 19.)

The FDCPA provides two alternative definitions of "debt collector" to include (1) any person "who uses any instrumentality of interstate commerce . . . the principal purpose of which is the collection of any debts," or (2) any person who " regularly collects . . . debts owed or due or asserted to be *owed or due another*." 15 U.S.C. § 1692a(6) (emphasis added). The Complaint fails to allege facts which could establish that Wells Fargo meets either definition. To satisfy the "principal purpose" definition, the person or entity's "most important aim" must be the collection of debts. *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267 (3d Cir. 2019) (internal quotation marks omitted) (contrasting a debt collector with a bank "for which debt collection is one of

12

perhaps many parts of its business"). Wells Fargo is a multinational financial services company. *See* (Compl. ¶ 7). *See Stone v. JPMorgan Chase Bank, N.A.*, 2019 WL 6349475, at *2 (finding JPMorgan Chase, a multinational services firm, to not qualify as a debt collector under the "principal purpose" definition). Nor is Wells Fargo a debt collector under the "regularly collects" definition. This definition is only applicable to entities collecting debt "for another." *Henson v. Santander Consumer USA*, 137 S. Ct. 1718, 1721 (2017) (internal quotation marks omitted). There is no allegation that Ahmed owed debt to anyone other than Wells Fargo; indeed, Wells Fargo collected payments from her on its own behalf. *See* (Compl. ¶¶ 29–38; 63; Assignment, Ex. C).

V

Courts should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). "This certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (citing 6 Wright & Miller, Federal Practice and Procedure: Civil § 1474 (3d ed. 2019)). Ahmed is free to amend Counts II and III consistent with this Memorandum and to the extent she can allege facts sufficient to state a plausible claim for relief. Counts I and IV are dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.
